BLANK ROME LLP
Jeremy J. O. Harwood
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001

Attorneys for the Administrators of **STX PAN OCEAN CO. LTD.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**STX PAN OCEAN CO. LTD.,**<br><br>Debtor in a Foreign Proceeding | Chapter 15<br><br>Case No. 13-B_____ |

**EX PARTE APPLICATION FOR PROVISIONAL RELIEF PENDING RECOGNITION OF A FOREIGN MAIN PROCEEDING**

YOU SIK KIM and CHUN IL YU, as the court appointed trustees or administrators (the "Petitioners") of STX PAN OCEAN CO. LTD. (the "Company"), the foreign representatives, in the Company's proceeding under the Korean Rehabilitation and Bankruptcy Act (as amended, the "DBRA") pending before the Seoul Central District Court, (case number 2013 *hoehap* 110 Rehabilitation) (the "Korean Bankruptcy Proceeding"), by their special United States counsel, Blank Rome LLP, respectfully make this application ("Application") to this Court, pursuant to sections 105(a) and 1519 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order to show cause with temporary restraining order substantially in the form annexed hereto as **Exhibit "A,"** prohibiting the commencement or continuation of proceedings against the Company or its property within the territorial jurisdiction of the United States including

1

owned, operated or chartered (leased) vessels or property thereon (including bunkers), as further defined in 11 U.S.C. §1502(8) (collectively, "Assets"), and scheduling a hearing on the Petitioners' request for a preliminary injunction order substantially in the form attached hereto as **Exhibit "B."** In support hereof, the Petitioners respectfully represent and state as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code, and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984 and the Amended Standing Order of Reference M-431 dated January 31, 2012 (Preska, Acting CJ.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1410.

3.    The statutory predicates for the relief requested herein are sections 105(a) and 1519(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure, and Rule 65 of the Federal Rules of Civil Procedure.

## BACKGROUND

4.    The Court is respectfully referred to the Verified Petition and the Declarations of Petitioners, filed on June 19, 2013, which outline the relevant facts regarding the Company and the Korean Bankruptcy Proceeding, all of which are incorporated herein by reference, as well as the accompanying declaration of Jeremy J.O. Harwood dated June 20, 2013 in support pursuant to Local Rule 9077-1(a).

**The Korean Proceeding**

5.    In brief, on June 7, 2013, the Company applied for rehabilitation under the DRBA. The Korean Bankruptcy Court, by order dated June 7, 2013 reviewed the application

2

and issued an order granting a comprehensive stay to the Company. On June 17, 2013 it issued a "commencement order" appointing the Petitioners as the Korean equivalent of trustees or administrators. Certified copies of the foregoing orders in Korean with a certified affidavit of translation into English are attached as Exhibits A-D to the declaration of Sun Kyoung Kim, dated June 19, 2013.

6. On June 20, 2013, the Petitioners filed a Chapter 15 petition for the Company pursuant to sections 1504 and 1515 of the Bankruptcy Code, commencing the Chapter 15 case ancillary to the Korean Bankruptcy Proceeding and seeking recognition of such foreign proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code and relief in aid of the Korean Bankruptcy Proceeding.

7. The Company is prohibited by the DBRA from paying any debts incurred prior to the commencement of the Korean Bankruptcy Proceeding.

**REQUEST FOR RELIEF**

8. By this Application and in furtherance of their duties as the duly appointed administrators of the Company, the Petitioners seek (i) immediate entry of ex parte provisional relief staying execution in the United States against any Assets of the Company, prohibiting all persons or entities from commencing or continuing any litigation or any other proceeding, including, without limitation, arbitrations, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding or process whatsoever, or taking any other action against or involving the Petitioners (with respect to the Company), the Company, or any of the Assets of the Company; and (ii) the scheduling of a hearing on the Petitioners' request for continuing provisional relief.

131346.00603/7253580v.1

9.  The Petitioners believe that granting the relief sought herein will best assure an economical, expeditious and equitable administration of the Company's estate. Moreover, rather than exposing the Company and its Assets to litigation that could lead to piecemeal distribution of its Assets, as well as additional costs and distraction from the administration of the estate, the Petitioners will be afforded the "breathing room" to conduct an orderly review of the Company's affairs so that all of its creditors receive equitable treatment in the Korean Bankruptcy Proceeding.

10. The Petitioners further believe that unless this Court enjoins creditors from seizing the Assets of the Company and initiating or continuing any actions against the Company or its Assets, the Company will be immediately and irreparably harmed. At present, as detailed in the Rule 1007(a)(4) lists ("Lists"), three of the Company's vessels are under arrest in the U.S. and the Company is a defendant in five U.S. lawsuits. If such relief is not granted, certain maritime creditors will gain an advantage over other creditors, the Petitioners will be hindered in their efforts to manage the Company's financial affairs, there will be no orderly administration of the assets of, and claims against, the Company, by way of the Korean Bankruptcy Proceeding.

## BASIS FOR REQUESTED TRO

**1. PETITIONERS SEEK IMMEDIATE INTERIM RELIEF TO PREVENT A "RACE TO THE COURTHOUSE"**

11. The Petitioners request immediate, interim relief from this Court in the form of a temporary restraining order and preliminary injunction enjoining any commencement or continuation of litigation against the Company or its Assets *in rem* including continuation of any litigation against the Company or its Assets of which it has not yet received notice, and the seizure of any of the Company's Assets. *See* 11 U.S.C. § 1519. The Petitioners request this

131346.00603/7253580v.1

interim stay until the recognition hearing in order to maintain the status quo and to avoid wasting assets of the Company or unfairly disadvantaging the Company's creditors.

12. Upon the Court's recognition of a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code states that the automatic stay provisions of section 362 of the Bankruptcy Code apply to protect the Company from commencement or continuation of any claims as well as any act to take possession of the Company's property. Id.; see also United States v. J.A. Jones Constr. Group, LLC, 333 B.R. 637, 638 (E.D.N.Y. 2005) (stating that once a foreign bankruptcy proceeding is recognized, a wide range of relief immediately becomes available, including the automatic stay provision of section 362).

13. Chapter 15 has been invoked in a number of international shipping bankruptcy cases to obtain exactly the interim relief sought here, namely to prevent a "race to the Courthouse" by Rule B and Rule C plaintiffs.

14. In In re Atlas Bulk Shipping A/S, 09-10314, 404 B.R. 726 (Bankr. S.D.N.Y. Apr. 27, 2009) numerous Rule B plaintiffs had obtained attachment of Atlas Bulk's EFTs (electronic fund transfers) in this district, both before and after it filed its bankruptcy proceeding in Denmark.

15. Atlas Bulk subsequently filed its Chapter 15 petition in this Court and sought vacatur of all the Rule B attachments and repatriation of the attached EFTs to what was recognized to be a foreign main proceeding.

16. Judge Glenn granted the vacatur based on comity with the Danish case.

17. District Judge Leisure in CSL Australia Pty. Ltd. v. Britannia Bulkers PLC et al, 2009 U.S. Dist. LEXIS 81173 (Sept. 8, 2009) considered Britannia A/S' request to vacate the plaintiff's Rule B attachment and turnover of the attached funds to its trustee in its Danish

5

bankruptcy proceeding. Plaintiff, "CSL", responded by asserting an entitlement, <u>inter</u> <u>alia</u>, to confirm as a judgment a Singapore arbitration award it had obtained on the merits of the dispute, for which it had originally obtained the attachment.

18. The Court discussed pre-Chapter 15 cases, including <u>Cunard S.S. Co. v. Salen Reefer Services A.B.</u> 773 F.2d 452, 458 (2d Cir. 1985) (affirming <u>vacatur</u> of Rule B attachment against Swedish debtor) and held:

> The Court finds that vacatur of the amended order of attachment is supported by principles of comity. The Court has reviewed the unrebutted evidence Britannia A/S has proffered on Danish bankruptcy law. Nothing in the record indicates that deference to the Danish Court would violate or infringe the laws or public policy of the United States, or that the Danish proceedings are procedurally unfair.
>
> \*   \*   \*
>
> In this vein, "[p]ermitting the Rule B attachment to stand would run afoul of principles of international comity," <u>Transfield ER Cape Ltd. v. STX Pan Ocean Co.</u>, No. 09 Civ. 1250, 2009 U.S. Dist. LEXIS 21185, at \*13 (S.D.N.Y. Mar. 17, 2009) Koetl, J.), by enabling CSL to make an end-run around the Danish Court's explicit proscription against disposition of a debtor's property outside of the bankruptcy proceeding, and the unconditional dissolution under the Danish Bankruptcy Code of all attachments made prior to the bankruptcy.
>
> In a similar situation, <u>In re Atlas</u>, currently proceeding under chapter 15 of the Bankruptcy Code, the Bankruptcy Court vacated certain Rule B attachments against Atlas Shipping ("Atlas") and related companies, and turned garnished funds over to the foreign representative for administration in Atlas's Danish bankruptcy proceeding. Some of the attachments against Atlas were obtained before the chapter 15 petitions were filed, although neither Atlas nor the foreign representative sought to vacate those attachments in the district court under Rule E(4)(f). Id at \*9.

<u>Id</u>. at \*12-15.

6

19. Both decisions are entirely on point and particularly apt given the attempt by the arresting parties identified in the Lists to "end run" the Korean Rehabilitation Proceeding.

### A. The Relief Requested Is Authorized Under the Bankruptcy Code

20. Section 1519(a)(3) authorizes the Court to grant "relief of a provisional nature" from the time a Chapter 15 petition is filed until the court rules on that Chapter 15 petition, where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Section 1519(a) specifically allows the Court to enter relief of the kind requested herein. Id., see also 11 U.S.C. §1521(a)(3), (4) and (7) (setting forth additional forms of relief allowed in a provisional order as incorporated by reference in 11 U.S.C. § 1519(a)(3)). Section 105(a) of the Bankruptcy Code also allows the Court to "issue any order… necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Section 105(a) has been cited in conjunction with former section 304 of the Bankruptcy Code to allow bankruptcy courts to mold relief in near blank check fashion. In re Culmer, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982). As such, the relief sought by the Petitioner is within the broad power of this Court as clearly contemplated in sections 1519, 1521 and 105 of the Bankruptcy Code.

21. Moreover, the relief requested by the Petitioners, being exactly the kind of relief contemplated by the above provisions, has been granted in other shipping Chapter 15 cases. See e.g. In re Daewoo Logistics Corp., Chapter 15, Case no. 09-15558 (BRL); In re Korea Line Corp., Chapter 15, Case No. 11-10789 (REG); In re Samsun Logix Corp., ("Samsun") Chapter 15 Case No. 09-11109 (SMB) (Bankr. S.D.N.Y. 2009); In re Armada (Singapore) PTE. LTD., Chapter 15, Case No. 09-10105 (JMP) (Bankr S.D.N.Y. 2009), In re Britannia Bulk Plc, Chapter 15, Case No. 0814543 (REG) (Bankr. S.D.N.Y. 2008).

7

22.     The injunctive relief requested is necessary as cited under prior Section 304 cases, to "prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group." In re Banco Nacional de Obras v. Servicios Publico, S.N.C., 91 B.R. 661, 661 (Bankr. S.D.N.Y. 1988), See also, Britannia, supra. It is also necessary so that the Company's affairs can be centralized in a single forum in order to maximize the creditors' interests. See Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir. 1976), cert denied, 429 U.S. 1093, reh'g denied, 430 U.S. 976 (1977).

23.     Additionally, the relief requested is needed to protect the Assets of the Company from the initiation or continuation of pre-judgment enforcement actions under Rule B and Rule C; without such relief, the Company is exposed to an imminent risk of further pre-judgment attachment or arrest of its Assets, namely vessels, and other actions which would result in a "race to the courthouse" by all parties.

24.     Section 1519(e) provides that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. § 1519(e). As discussed below, the Petitioners are able to show that they and the Company can meet the requirements for a temporary restraining order and preliminary injunction.

**B. The Petitioners Satisfy the Requirements for a Temporary Restraining Order**

25.     The Petitioners meet the requirements for a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure, which is made applicable in this case by Rule 7065 of the Federal Rules of Bankruptcy Procedure. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in order to obtain an ex parte temporary restraining order, the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before

the adverse party or that party's attorney can be heard in opposition." <u>See</u>, <u>e.g.</u>, <u>TKR Cable v. Cable City Corp.</u>, 167 F.3d 196, 198 (3d Cir. 2001) (granting ex parte temporary restraining order against defendant to enjoin further sale of cable television descramblers); <u>Gorman v. Coogan</u>, 273 F. Supp.2d 131, 134 (D. Maine 2003) (issuing <u>ex parte</u> temporary restraining order to prevent corporation from indemnifying current directors' expenses in defending legal action because company faced imminent bankruptcy if temporary restraining order was not entered).

26. As described herein, the requested provisional relief is required to preserve the Company and its Assets, and to ensure that all of the Company's creditors receive equitable treatment by way of the claims process in the Korean Bankruptcy Proceeding. The threat to the Company's Assets here in the United States under Rule B and Rule C is very real and imminent. For example, in <u>Duferco S.A. et al. v. M/V BLUE OCEAN</u>, 13-111 (E.D. Tex.) plaintiff filed suit on June 13, 2013 seeking to arrest the vessel, by warrant issued that day. Similarly, an arrest warrant was issued on June 10, 2013 against the M/V NEW AMBITION. <u>See</u>, <u>World Fuel Services (Singapore) Pte. Ltd. v. M/V NEW AMBITION and STX PAN OCEAN CO. LTD.</u> (W.D. Wa. 13-5452). Suit was filed M/V STX ARBORELLA on June 6, 2013. <u>Bomin Bunker Oil Pte Ltd. v. M/V STX ARBORELLA and STX Corp.</u>, (E.D. TEX. 13-cv-00362).

27. Moreover, a hearing on actual notice to identified parties in interest, would be scheduled within ten days of entry of the TRO, as in the several other shipping Chapter 15 cases, and thus the period in which parties would be subject to the <u>ex parte</u> restraining order would be minimal. The order to show cause also provides that parties have a right to request relief from the TRO prior to the date scheduled for the hearing on the Preliminary Injunction Order on two business days notice. <u>See</u>, <u>e.g.</u>, <u>Fidelity Mortgage</u>, 550 F.2d at 55 (Rule 11-44 under the former Bankruptcy Act, which provided that a petition under Chapter XI of the Bankruptcy Act

9

automatically stayed all proceedings against the debtor without prior notice to creditors, did not violate creditors' due process rights in light of the fact that it provided for a procedure for lifting the automatic stay).

### C. The Petitioners Satisfy the Requirements for a Permanent Injunction

28.    The Petitioners have also satisfied the Second Circuit's standards for a permanent injunction. That standard requires that a court consider whether (i) the plaintiffs are successful on the merits of their claim, (ii) there is no available remedy at law, and (iii) the balance of equities favors granting such relief.  See, Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), aff'd 41 F.3d 1570 (2d Cir. 1994); New York State National Organization for Women v. Terry, 704 F. Supp. 1247, 1262 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. denied, 495 U.S. 947 (1990).

### D. Likelihood of Success on the Merits

29.    The Petitioners and the Company will be entitled to relief identical to the provisional relief requested herein upon recognition of the Korean Bankruptcy Proceeding as a foreign main proceeding. See 11 U.S.C. §§ 1520 and 1521. Thus, the Petitioners must show that the Court will likely find that (i) the Korean Bankruptcy Proceeding is a Foreign Proceeding, (ii) the Petitioners are Foreign Representatives, and (iii) the Korean Bankruptcy Proceeding is a Foreign Main Proceeding in order to show a likelihood of success on the merits.  Samsun, Daewoo and Korea Lines, all of which are Korean companies, obtained recognition orders in their Chapter 15 cases, granting recognition of their DRBA proceedings as foreign main proceedings.

### (i)    The Korean Bankruptcy Proceeding is a Foreign Proceeding

30.    Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

10

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

As more fully described in the supporting documents to the Chapter 15 Petition, the Korean Bankruptcy Proceeding was commenced pursuant to the DRBA, which governs the Company's rehabilitation and provides for a centralized procedure by which the Company's creditors have the opportunity to file their claims in the Korean Bankruptcy Proceeding. As such, the Korean Bankruptcy Proceeding is a collective judicial proceeding in a foreign country under a law (the DRBA) relating to adjustment of debt in which the assets and affairs of the Company are subject to control or supervision by the Korean Bankruptcy Court.

31. The Korean Bankruptcy Proceeding is (i) a collective judicial proceeding in a foreign country, (ii) in which the assets and affairs of the debtor are subject to supervision by a foreign court, and (iii) for the purpose of reorganization or liquidation. Moreover, the DRBA is a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of section 101(23) of the Bankruptcy Code, the Korean Bankruptcy Proceeding is a foreign proceeding. Accordingly, this Chapter 15 case concerns a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code.

    **(ii)**    **The Petitioners Are Foreign Representatives**

32. The Chapter 15 case was commenced by authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code, which provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's asserts or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

33. As individuals, the Petitioners are "persons" within the meaning of section 101(41) of the Bankruptcy Code. Further, the Petitioners are the duly appointed administrators of the Company and authorized to act as representatives of the Company with respect to the Korean Bankruptcy Proceeding. Accordingly, the Petitioners are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code and are therefore entitled to commence this case under Chapter 15 of the Bankruptcy Code.

### (iii) The Korean Bankruptcy Proceeding is a Foreign Main Proceeding

34. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. See 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that, absent evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. See U.S.C. § 1516(c); see In re Bear Stearns Hogh-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd* 389 B.R. 325 (S.D.N.Y. 2008) (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").

35. The Company's registered office is located in Seoul, Korea and, in accordance with section 1517(b), in the absence of evidence to the contrary, Korea should be found to be the center of the Company's main interests. In re Sphinx, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (noting that the debtors' center of main interests are presumed to be the Cayman Islands, where the debtors are registered). The assertion that Korea is the center of the Company's main interests is further supported by the fact that the Company is incorporated under Korean Law. Additionally, the Company's head office is located at STX Namsan Tower, 5-Ga 631,

12

Namdaemun-ro, Jung-gu, Seoul, Korea where it undertakes its daily business activities. Thus, Korea is "ascertainable by third parties" as the Company's center of main interests. See In re Bear Sterns, 374 B.R. at 130 (noting that debtor's center of main interests is the United States where the debtors "conduct the administration of their interests on a regular basis is therefore ascertainable by third parties"). Accordingly, absent evidence to the contrary, given that the Korean Bankruptcy Proceeding is pending in Korea, the center of the Company's main interests, it should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.

  **(iv)**  **Inadequacy of Legal Remedy**

  36.  Irreparable harm is one basis for establishing the inadequacy of any legal remedy. Travellers, 722 F. Supp. at 1096. It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). As described above and herein, the risk of such irreparable harm is clearly present here and was recognized by this Court in Samsun, Daewoo and Korea Lines in like circumstances. The successful administration of the Company requires that the resolution of all claims be centralized in the Korean Bankruptcy Proceeding without creditors obtaining preferences and interfering with the Company's assets.

  **(v)**  **The Balance of the Hardship Tips Decidedly in Favor of the Petitioners**

  37.  The balancing of the hardships tips decidedly in favor of the Petitioners. Enjoining all litigation against the Company and the attachment, seizure, transfer and lien and/or judgment enforcement of any parties as against the Company or its Assets *in rem* will prevent their permanent loss to the estate and will cause minimal hardship to any persons subject to the injunctions. Indeed, all of the Company's creditors will benefit from the Petitioners' efforts to preserve and maximize the value of the Company's estate as such an injunction will prevent the

Company's Assets from being permanently lost. All creditors will be able to participate in the Korean Bankruptcy Proceeding on an equitable basis with all other similarly situated creditors.

38. No previous application for the relief requested in this Application has been made in this or any other court.

### REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-I(b)

39. It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities and legal authorities in support of this application are contained herein.

### CONCLUSION

**WHEREFORE**, the Petitioners respectfully request that this Court (i) enter, substantially in the form annexed hereto as **Exhibit A**, the proposed order to show cause with temporary restraining order, (ii) schedule a hearing to consider the Petitioners' request for continuing provisional relief, (iii) enter the proposed preliminary injunction order, substantially in the form annexed as **Exhibit B** and (iv) grant any such other relief as this Court determines is fair and just under the circumstances.

Dated: New York, New York
       June 20, 2013

                Respectfully submitted by

                BLANK ROME LLP

            By: /s/ Jeremy J.O. Harwood
                Jeremy J.O. Harwood
                405 Lexington Avenue
                New York, New York 10174-0208
                Telephone (212) 885-5149
                Facsimile (212) 885-5001
                Attorneys for the Petitioners